Moncure, J.
It is unnecessary to express any opinion on the question arising in this case as to the jurisdiction, as well of this court as the court below; 'this court being equally divided in opinion on that question, and being therefore unable to decide the case on that ground. My opinion on the merits, is as follows;
By 1 R. C.1819, ch. 111, § 32, the justices of every county or corporation were.declared to “be justices of oyer and terminer for trying slaves charged with felony; which trials shall be by five at least without juries. Ho slave shall be condemned in any'such case unless all of the justices, sitting upon his or 'her trial, shall agree in opinion, that the prisoner is guilty.” Tate’s Dig. 212, Ho. 2.
By act of 12th February, 1828, Sess. Acts, p. 29, slaves were made triable for simple larceny of a • thing of the value of $20 or less, by a justice of the peace, and puniáhable by stripes.
Slaves convicted of offences without the benefit of clergy, were punishable with death; withim, the benefit of clergy, were punishable by being burnt in the hand, and suffering such other corporal punishment as the court should think fit to inflict; except when they once had the benefit of clergy, in which case they were punishable with death. Tate 215, Ho. 13; 1 R. C. ch. Ill, § 15. Burning in the hand was abolished by act of *563 February 8th, 1838, Sess. Acts, p. 76. The act of November 27th, 1789, prescribes in what cases the benefit of clergy should and should not be allowed. E. C. ch. 172, § 1 to 9; Tate’s Dig. pp. 275-6, Nos. 14 to 22.
By act of March 15th, 1830, Sess. Acts p. 22, § 11, oh. 22; except in case of homicide and where the punishment shall be death, free negroes were to be prosecuted, tried, &c., as slaves. Tate 273, note 2.
Where a slave was tried and convicted of any crime which might affect life, the court was directed to cause the testimony to be entered of record, and a-copy of the whole proceedings to be sent to the executive. E. O. eh. 274, § 40; Tate 274, No. 8.
The governor with the advice of council was authorized, when it should he -deemed expedient, to contact and agree with any person for the sale and purchase of -all those slaves who might be under sentence of death for conspiracy, insurrection, or other crimes. R. C. ch. 274, § 39; Tate 275, No. 11. See also Id. No. 12.
Thus stood the law when the act of 1847-8 was passed, entitled the “ Criminal Code.”
By that act, ch. 26, § 1, it was declared that the county and corporation courts, consisting of five justices at the least, shall be courts of oyer and termvncr for the ■¿rial of slaves charged with felony, and of free negroes charged with any felony except in cases of homicide and where the punishment may be death. § 4: No slave shall be condemned to death, and no free negro to the penitentiary; unless the justices sitting on his trial shall agree in the sentence. § 5: When any slave shall be condemned to death or any free negro to the penitentiary, the court shall cause the testimony given on his trial to he committed to writing and filed of record, -and the clerk shall forthwith send a copy of the whole proceeding to the -executive. Slaves were triable for *564 misdemeanors by a justice of the peace, and punishable by stripes. Oh. 26, § 11, p. 163; ch. 12, § 14, p. 126. Offences committed by slaves were felonies or misdemeanors. Those shall be felonies which are punishable with death, or which, if committed by free persons, would be punishable by death or by confinement in the penitentiary. All other offences shall be misdemeanors. Ch. 12, § 15, p. 126. Any slave who shall commit any offence, for the commission whereof a free person at the time of committing the same is punishable with death or by confinement in the penitentiary for a period not less them three yea/rs, shall be punished with death. Id. § 1. Any slave who shall commit any offence for the commission whereof a free person at the time of committing the same is punishable by confinement in the penitentiary for a period less than three yern's shall be punished by stripes. Id. § 2. Any slave having been once sentenced for any offence mentioned in the preceding section, who shall afterwards commit any such offence and be adjudged guilty thereof, shall be punished with death. Id. § 3.
Thus stood the law at the time of the revisal of 1849.
The revisors report corresponded, substantially, with the act of 1847-8, in' regard to punishment, mode of trial, and manner of conviction of slaves for felony. P. 990, ch. 200, § 4 and 5; p. 1036, § 2 to 7. But in a’note to §' 4, p. 990, they made' this suggestion: “Instead of having for slaves but two classes of punishment, a third at least should be recognized by law. There should, in this chapter,-be a designation of offences too serious to be punished by stripes, yet not sufficient to be punished by death, in which the sentence should be that the slave be sold to be transported beyond the limits of the United States. That might be the sentence of the court in a considerable number of cases. Even then the sentence of death would still be pro *565 nouneed in many cases in which the executive should have the power of reprieving for transportation.”
By the Code of 1849, ch. 17, § 20, it is declared that, “In the case of a slave under sentence of death, the governor may order a. commutation of the punishment by directing that such slave be sold to be transported beyond the limits of the United States,” &e.
Oh. 200, § 7. “If a slave plot or conspire to rebel or make insurrection, or commit an offence, for the commission of which a free negro, at the time of committing the same, is punishable with death or by confinement in the penitentiary for not less than three years, he shall be punished with death. But unless it be an offence for •which a free white person, if he had committed it, might have been punished with death, such slave instead of being punished with death, may at the discretion of the court, be punishedby sale and transportation beyond the limits of the United States.
Id. § 8. If a slave commit an offence for which a free negro, if he had committed it, might be punished by confinement in the penitentiary for a period less than three years, such slave shall be punished by stripes; and if, having been once sentenced for such offence, he afterwards commit an offence for' which a free negro, if he had committed it, might be punished by such confinement, he shall be punished with death, or, at the discretion of the court, by sale and transportation as aforesaid.
Id. § 9. “ If a slave be sentenced to sale and transportation under either of .the next two preceding sections, the same proceedings shall be had as in the case of a slave under sentence of death, whose punishment is commuted by the governor to sale and imprisonment.
The words in § 7, of chap. 200, which are italicised in the foregoing citation, seem to have been adopted by the legislature in consequence of the suggestion of *566 the revisors before mentioned. They do not, in strict-pursuance of that suggestion, designate a class of offences to be punished by sale and transportation, but merely give the court a discretion' to adopt that punishment instead of death, except as therein mentioned, instead of pronouncing the sentence of death, and leaving it to the executive to commute or not, according to its discretion, under ch. 17, § 20.
Thus the law now stands; and the question is, whether all the justices, sitting on the trial of a- slave, charged with an offence, for the commission of which, a free negro, at the time of committing the same, is punishable with death, or by confinement in the penitentiary for not less than three years, must not agree in his conviction, in order to his being punished by sale or transportation, at the discretion of the court, under the words in italics as aforesaid ?
Beyond a doubt, unanimity was necessary‘to the conviction of a slave for such an offence, before the Code of 1849 was adopted; for so the law expressly declared. Is such necessity dispensed with by the words super-added in that Code, “But,” “such slave, instead of being punished with death, may, at the discretion of the court, be punished by sale and transportation beyond the limits of the United States?” "Were these words intended to produce so radical a change of the law as to authorize a conviction of a slave for such an offence by a less number than all of the justices composing the court, provided he was punished by sale and transportation instead of death? Certainly, unanimity in the conviction is still necessary to authorize the punishment of death. Why is it not also still necessary to authorize the alternate punishment, which the court, at its discretion, may inflict, instead of death ? The question of guilty or not guilty comes up for decision by the court before the question as to the manner of punishment. The prisoner *567 must first be determined to be guilty, before tbe court • -rm can be called on to say bow be is tobe punished. When. tbe court” is divided upon that question, can tbe effect of snob division be, a conviction or acquittal, according as tbe court shall afterwards determine whether tbe punishment sliall be death or sale and transportation 1 To the offencej the law has annexed the punishment of death; and in reference to that punishment the case must be decided. Accordingly tbe law requires tbe court to be unanimous to convict. But having convicted, tbe Jaw gives power to the court, at its discretion or election, instead of the punishment of death to inflict the punishment of sale and transportation. The very term “ discretion,” implies that the punishment of sale and transportation can only be inflicted where death might or would have been inflicted but for tbe exercise of such discretion. And tbe terms, “ instead of being punished with death,” imply the same thing. The same or nearly the same observations apply to tbe succeeding sections of the Code to the one now under consideration.
Code, ch. 200, §§ 7 and 8.
The meaning of the words in the' Code, ch. 212, § 5, «No slave shall be condemned to death nor a free negro to the penitentiary, unless all the justices sitting on his trial agree in the sentence,” in my view is, that “ no slave shall be convicted ofa/n offence punishable with death” Ac., “unless all the justices,” Ac., “shall agree in the judgment of eonvietion.” The old law had said, “No slave shall be condemned in any such case,” that is in any case of felony, however punishable, “unless all of the justices sitting upon his or her trial shall agree in opinion that the prisoner is guilty.” The legislature of 1847-8 classified felonies committed by slaves, making tbe higher class punishable with death and the lower with stripes, and requiring unanimity of the justices in order to a conviction, only in the former case. It ac- *568 comP^s^e(^ ^16 pui’pose of this requisition simply by saying, “ no slave shall be condemned to death,” &c. The purpose was fully accomplished by these words, and COuM not have been accomplished in fewer words. The punishment of death applied, certainly and unconditionally, to every offence for which a free person, if he had committed it, would have been punishable by confinement in the penitentiary for a period not less than three years. Therefore saying, that “no slave shall he condemned to death,” &c., was, in effect, though in fewer words, saying, that “no slave shall be condemned for an offence punishable with death,” &e., and this effect, it seems to me, was not intended to he changed, and is not changed, by the words superadded in the Code of 1849 as aforesaid.
This construction seems to me to he also reasonable. The legislature of 1847-8 intended'to dispense with the necessity of unanimity in the conviction of slaves for felony only in inferior cases; that is,, cases punishable by stripes. And the legislature of 1848-9, in authorizing the punishment of sale and transportation to be adopted at the discretion of the court instead of the punishment of death in the higher class of felonies, could hardly have intended, by mere implication, to disípense with such necessity in such cases.
But it is said that the words of the law are too plain for construction; that the legislature has only said, “ no slave shall be condemned to death” &c.; that unanimity is required in no other case, and upon no other question, than on the mere sentence of death. But this, it seems to .me, is too literal a construction, and sacrifices the obvious meaning of the law. According to this construction a slave might be convicted by a hare majority of the court provided the whole court concurred in the sentence of death; which certainly could not have been intended. The words “ condemned to death,” do not *569 mean the mere sentence of death as the consequence of conviction, but the conviction itself, and, as before said, is only another and shorter, though not so accurate a mode of saying, “condemned for an offence punishable with death.” The manner of punishment was expressed to signify the offence itself. The word “ condemned ” was used in the old law: “No slave shall be condemned in any such case”, that is for any felony; and the same word was continued to be used in the act of 1847-8, and the Code of 1849 : “ No slave shall be condemned to death.” Under the act there was no difficulty, and it would seem there should be none under the Code. The words added in the latter were not designed to effect a change in the construction of the preceding words— but only to give to the court, to a certain extent,' the power of commutation,- which before had exclusively been vested in the executive. If the court refuses to exercise the power thus given to it, the executive may still exercise it as before, and may exercise it in cases to which the power of the court does not extend. But whether the power be exercised by the executive or the court, its exercise, it seems to me, ought to be preceded by a unanimous conviction of the accused. A free negro cannot be condemned to the penitentiary for the shortest period, without the unanimous judgment of his triers. Could it have been intended that a slave might be condemned to sale and transportation beyond the limits of the United States by a bare majority? The scheme for adjusting the mode of trial of negroes was, to require unanimity in regard to higher offences, but to authorize a conviction by a mere majority in regard to inferior offences punishable by stripes, whether the offender was a slave or a free negro.
In my view of this case, as must plainly be perceived, unanimity is not required to convict a slave of every felony, but only a felony punishable with death, and it *570 is therefore not necessary to my construction of the law that the words “to death” should be rejected. On the contrary I would retain these words, and merely supply others to effectuate the intention of the legislature, which was sufficiently expressed by the words as originally used in the act of 1847-8, but was obscured by the additional words used in the Code of 1849.
The words of the old law were, “ unless all of the justices, &c., shall agree in opinion that the prisoner is guilty.” The words of the new law are, “ unless all the justices, &c., agree in the sentence,” that is “ that the prisoner is guilty.” Guilty of what? Not of death, but of an offence punishable with death. The two laws used similar language in many respects, and ought to be construed alike,- except where. a change was plainly intended. A change was plainly intended so far as to limit the requisition of unanimity, which formerly extended to all felonies, to that class of them only which was punishable with death,- but was not plainly intended in any other respect. And therefore the word “ condemned” in each applies to the offence and not the punishment merely, and the words “'agree in the sentence” in one, near the same as the words “agree in opinion that the prisoner is guilty”, in the other; both applying also to the offence and not the punishment. The words “unto death,” used in the one ■ case and not the other, were used to designate the higher class of felonies to whiehthe law applied, and not to be confined according to their strict, literal and abstract import to the mere sentence of death- following the judgment of conviction.
I have now only to apply the foregoing views to the case under consideration. The offence for which the slave Elvira was tried being punishable with death, and all the parties who sat on her trial not having agreed in her conviction, she was therefore, in effect, acquitted. *571 It follows that I am for reversing the judgment of the Circuit court and rendering a judgment to discharge her from imprisonment and restore her to the possession of her owner.
The other judges concurred in the opinion of -MossCUREj J.
Prisoner discharged.